Olar REEDER, Plaintiff,

v.

BALLY'S TOTAL FITNESS CORPORATION, et al., Defendant.

Civil Action No. 2:96cv619.

United States District Court, E.D. Virginia, Norfolk Division.

May 9, 1997.

Mark David Brynteson, Douglas Wayne Davis, Davis, Irwin & Brynteson, Chesapeake, VA, Philip J. Geib, Philip J. Geib, P.C., Virginia Beach, VA, for Plaintiff.

Robert William McFarland, Douglas Edwin Miller, McGuire, Woods, Battle & Boothe, Norfolk, VA, for Defendant.

### ORDER

MORGAN, District Judge.

On April 30, 1997, this Court conducted a bench trial in the above-styled action on plaintiff's claims for breach of express and implied warranties in a bailment or lease agreement, and for negligence. *See* Va.Code Ann. §§ 8.2A–210, 8.2A–212, 8.2A–213. All claims arose from an injury plaintiff, Olar Reeder, allegedly received while using a stomach curl machine at Bally's Total Fitness Corporation's ("Bally's") Chesapeake, Virginia facility. Ruling from the bench, the Court **GRANTED** the defendant's motion for judgment as a matter of law at the close of plaintiff's case. This opinion will further explain the Court's rationale.

### I. Facts.

Viewing plaintiff's evidence in the light most favorable to her, the Court **FINDS** the following facts. On August 5, 1993, Ms. Reeder acquired a premier family membership with Bally's. The membership, purchased by her husband, Curtis Reeder, entitled the Reeders and two of their children to use all local and nationwide Bally's affiliates. Shortly after purchasing their membership, Ms. Reeder, accompanied by her husband, attended two orientation sessions at Bally's Chesapeake facility (the "Club"). At the first session, the Reeders and other new members were asked to fill out forms and were given instructions on how to perform warm-up exercises. At the second orientation session, the Reeders were shown around the Club by a Bally's employee and were specifically instructed on the correct use of four or five exercise machines.

On August 19, 1993, the Reeders made their third visit and first non-orientation visit to the Club. Mr. and Ms. Reeder warmed-up by walking around the Club's indoor track several times. The couple then began to exercise on various pieces of exercise equipment. Ms. Reeder experienced no difficulty until she tried to use a Pyramid Stomach Curl Machine, designed to strengthen the abdominal muscles.[1] This machine was not one of those demonstrated to her during the second orientation session, but she testified that she had used exercise machines of similar design and that she felt she understood how to use the machine. The stomach curl machine can be adjusted to provide greater or lesser resistance by selecting weights of appropriate denomination. Plaintiff testified that she set the machine's weight at 20 or 30 pounds, a weight she had comfortably used on other exercise machines. Plaintiff said she sat on the machine and looked for a seat belt but did not see one and obviously did not

---

1. While the parties stipulated in the Final Pre–Trial Order that the plaintiff was injured while using a stomach curl machine manufactured and sold by Pyramid Fitness Industries, Inc., all three witnesses who appeared at trial indicated that the photos of the stomach machine did not accurately depict the particular machine plaintiff was using when she was injured.

use one.[2] After reading approximately two (2) lines of written instructions attached to the machine explaining its use, plaintiff attempted to perform the exercise. These instructions did not refer to the seat belt. To perform the exercise, one sits on the machine and leans one's chest against a padded bar, pushing the bar in a downward arch towards the floor. In this way one is forced to tighten one's stomach muscles as if doing a situp. Plaintiff attempted the exercise, but she fell forward and struck her head on something near the base of the machine and passed out. Understandably, plaintiff does not fully recall the details of the incident.

On cross examination, the plaintiff was shown a placard, which contained instructions in the use of the machine, including a reference to the seat belt. She denied that any such placard was on the machine on the date of the incident and this was corroborated by her husband and Michael Cooper, another Bally's patron. It is undisputed that no one from Bally's instructed the plaintiff in the use of the stomach curl machine on the date of the incident or earlier.

Significantly there was no evidence presented regarding the use of such placards or instructions by Bally's or their use by the industry generally. Neither was any evidence presented of Bally's practice or the industry standard regarding instruction in the use of the machine in question or similar machines. Although the plaintiff had listed an expert witness in the pre-trial order no expert testimony was presented nor was any Bally's employee called to testify as to its standards or procedures.

At the time of the incident, Mr. Reeder was using a different piece of exercise equipment. He heard a thump, looked towards the noise and saw his wife slumped on the floor, partially draped over the base of the machine. Mr. Reeder went to his wife, removed her from the machine and laid her down on the floor. Bally's employees attend-

ed to plaintiff until an ambulance arrived and took her to a hospital for treatment.

After her discharge from the hospital, plaintiff visited her family physician, Dr. Thomas Harrington. Dr. Harrington referred plaintiff to Dr. John L. Grant, a neurological surgeon, who saw plaintiff for an evaluation on December 20, 1993, and on January 10, 1997 performed a surgical procedure known as a decompressive laminectomy in hopes of alleviating her symptoms. Plaintiff testified that she has made a partial recovery but continues to suffer from the same symptoms she experienced prior to the surgery, albeit to a lesser degree.

## II. Analysis.

At the close of plaintiff's case the defendant moved for judgment as a matter of law on all of plaintiff's claims. A district court sitting without a jury may enter judgment as a matter of law [3] at the close of the plaintiff's case-in-chief if the plaintiff has failed to establish an essential element of her claim. Fed.R.Civ.P. 52(c); *Carter v. Ball*, 33 F.3d 450, 457–458 n. 10 (4th Cir.1994). Finding that the plaintiff had failed to establish a prima facie case, the Court **GRANTED** the defendant's motion for judgment as a matter of law.

 This Court has jurisdiction based upon diversity of citizenship, as Bally's is a corporation organized and existing under the laws of the State of Delaware and plaintiff is a domiciliary of the Commonwealth of Virginia. 28 U.S.C. § 1332(a). A federal court, in the exercise of its diversity jurisdiction, is required to apply the substantive law of the state in which it is sitting, including that state's conflict of law rules. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Virginia's choice of law, UCC claims are governed by the substantive law of the forum, provided the forum has a substantial relation to the transaction. Va.Code Ann. § 8.1–105. In Virginia, substantive tort issues are governed by the

---

**2.** Subsequent witnesses testified that the machine was equipped with a seat belt.

**3.** In a non-jury trial, judgment as a matter of law under Rule 52(c) replaced a motion for an invol-

untary dismissal under Rule 41(b), effective December 1, 1991. The motion is still occasionally referred to as a motion for involuntary dismissal in reference to Rule 41(b).

doctrine of *lex loci delicti*, the place of the wrong or the place of the injury. *Ryder Truck Rental, Inc. v. UTF Carriers, Inc.*, 790 F.Supp. 637, 641 (W.D.Va.1992). In this case, the Commonwealth of Virginia is both the forum state and the place of injury. Therefore, Virginia substantive law will apply to both the warranty and negligence claims.

After pre-trial rulings by the Court, three theories of pretrial liability remained: breach of express warranty; breach of the implied warranties of merchantability and fitness for a particular purpose under the lease provisions of the Virginia Uniform Commercial Code ("UCC"), Va.Code Ann. §§ 8.2A–210, 8.2A–212, 8.2A–213; and negligence.

### A. Breach of Warranty

■ Plaintiff maintains that her membership agreement with Bally's constitutes a bailment or a lease. Under the UCC " '[l]ease' means a transfer of the right to possession and use of goods for a term in return for consideration ..." Va.Code Ann. § 8.2A–103(j). Plaintiff argues that her membership created a bailment in which she had an exclusive right to the use and possession of exercise equipment, at least while she was using a particular piece of equipment. *See* Va.Code Ann. § 8.2A–103, official comment (j).

The evidence at trial, however, showed that what plaintiff purchased with the membership agreement was a right to use the Club and its exercise equipment during business hours, provided the equipment was not being used by any other members of the Club. Plaintiff did not purchase the right to possess and use specific equipment for a specific period of time to the exclusion of all others. Plaintiff's right to possession or use of the exercise equipment was not superior to any other member of the Club. The Club could remove or replace equipment at their discretion. Plaintiff could not reserve equipment for a specific time or remove any equipment from the Club. Accordingly, the Court **FINDS** that the membership agreement does not constitute a bailment or lease of any

individual item of equipment under the UCC. The plaintiff was simply a business invitee upon the defendant's premises.

■ Even if the membership agreement could be construed as creating a bailment or lease, plaintiff presented no evidence that Bally's granted any express warranties or that it breached any implied warranties applicable to bailments or leases. Plaintiff presented no evidence that the exercise machine which she was using was defective when she was injured. Nor was there any evidence that the machine was inherently dangerous. While there was evidence that the defendant failed to warn or train Plaintiff in the proper use of the specific machine, there was no evidence from which the Court could infer that the defendant had a duty to so warn or train the plaintiff.

The evidence showed that the machine had a seat belt and instructions on the use of the machine.[4] However, there was no evidence as to whether or not a seat belt is necessary for the safe use of the machine, or what information should have been included in the instructions. The evidence indicated that plaintiff was given two orientation sessions regarding the proper use of the Club and its equipment. However, no evidence was presented that would allow the Court to determine whether these orientation sessions were sufficient. In the absence of such evidence, even if plaintiff had proven the existence of a warranty, there is no evidence or inference therefrom upon which to base a finding that such a warranty had been breached.

### B. Negligence.

■ The same absence of evidence doomed plaintiff's negligence claim. No evidence was presented that any defect in the machine caused the incident or that Bally's negligently maintained or repaired the exercise machine. As observed in the warranty section of the opinion, there is no basis upon which to find the defendant owed a duty to warn or train plaintiff in the safe use of the machine. No evidence was presented that

---

**4.** While plaintiff testified that the stomach curl machine had instructions explaining its use were attached to the machine, the evidence did not establish what was contained in the instructions, or whether that information was sufficient.

would allow the Court to determine what warning, if any, or what level of training or instruction is reasonable under the circumstances. No expert testimony was presented regarding what training should have been provided or what warnings or other safety precautions should have been taken. No employee of the defendant was called to testify regarding what Bally's own standards and procedures are or whether they were violated. In the absence of evidence that would allow the Court to establish some standard of care, the Court is unable to find from the evidence presented that Bally's was negligent in failing to warn or train the plaintiff. Accordingly, the Court **FINDS** no evidence upon which to base a finding that the defendant breached any duty it owed the plaintiff in her capacity as a business invitee.

### III. Summary.

Accordingly, the Court **FINDS** that the plaintiff has failed to establish a *prima facie* case and **GRANTS** defendant's motion for judgment as a matter of law. As to the warranty claims, no evidence was presented that an express warranty was extended. The Court **FINDS** that the plaintiff's family membership did not create a bailment or lease which would in turn give rise to an implied warranty as to any individual item of exercise equipment. Further, the court **FINDS** that there is no evidence upon which to base a finding that an implied warranty was breached, even if such a warranty exists. Finally, the Court **FINDS** that there is no evidence that the defendant breached any duty it owed the plaintiff as its business invitee.

The Clerk is **REQUESTED** to send a copy of this Order to counsel for both parties.

It is so **ORDERED.**